**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA

      Plaintiff,

         v.

BERNIS GONZALEZ MIRANDA.

      Defendant.

Crim. Case. NO. 10-344(PG)

## OPINION AND ORDER

Defendant Bernis González Miranda was an officer in the Puerto Rico Department of Corrections. In the fall of 2010, the Defendant was arrested by the FBI as part of "Operation Guardshack," a large-scale undercover investigation targeting corrupt law enforcement officers in Puerto Rico.

González was charged with three counts of conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (counts Fourteen, Twenty-Three and Twenty-Seven), three counts of attempting to possess with the intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (counts Fifteen, Twenty-Four and Twenty-Eight) and three counts of possession of a firearm in furtherance of a drug transaction in violation of 18 U.S.C. § 924(c) (counts Seventeen, Twenty-Five and Twenty-Nine). See Docket No. 68.

Defendant's attempts to enter into a plea bargain with the Government fell through and he proceeded to trial where he was found guilty on all counts. See Docket No. 434. Soon thereafter, González filed a motion, claiming that his attorney had been negligent in failing to finalize a plea agreement in direct contravention of his instructions. The Court initially denied relief and the plaintiff filed a Motion for Reconsideration. See Dockets No. 655 and 680.

For the reasons discussed below, we **GRANT** the Motion for Reconsideration.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

González was charged on October 28, 2010 along with eight other

codefendants, in a thirty-count indictment charging a series of offenses ranging from conspiracy to distribute controlled substances to possession of firearms in relation to a drug trafficking crime. See Docket No. 68.

Counts Fourteen, Fifteen, Twenty-Three, Twenty-Four, Twenty-Seven and Twenty-Eight charged violations to 21 U.S.C. § 846 and 841(a)(1) and 18 U.S.C. § 2, which carry a minimum term of imprisonment of 10 years and a maximum term of life imprisonment.

Counts Seventeen, Twenty-Five and Twenty-Nine charged violations to 18 U.S.C. § 924(c), which carry a minimum term of imprisonment of five years up to life imprisonment, to be served consecutively to the drug counts. Furthermore, counts Twenty-Five and Twenty-Nine carry a minimum mandatory term of 25 years as to each count to be served consecutively to each other and to the drug counts.

The defendant went to trial and was found guilty on all counts. See Jury Verdict entered on April 2, 2012 at Docket No. 434. On December 16, 2012 González filed a motion alleging ineffective assistance of counsel and requested a hearing on the matter. See Docket No. 602. According to González, his trial attorney, Carlos Calderón, failed to finalize a plea agreement negotiation with the government in utter disregard of González's instructions and willingness to plead guilty since the case's inception. González averred that his counsel's ineffective handling of the plea negotiations exposed him to a substantially longer sentence than he would have received had he accepted the government's offer. Id. On January 8, 2013 the government filed an Informative Motion detailing the plea bargaining efforts in the case and arguing that defense counsel did not commit an error that would constitute ineffective assistance of counsel. See Docket No. 609.

Ultimately, the Court held two hearings on the matter on March 1, 2013 and April 4, 2013 where Mr. Calderón testified as to his alleged incompetence. The defendant, however, did not take the stand to testify against his attorney. On March 7, 2013 Mr. Calderón filed a Motion in Compliance attaching several documents to show that he properly informed the defendant of the government's plea offers and that the defendant rejected the plea offers and plea agreement knowingly and voluntarily. See Docket No. 626. On October 4, 2013 the Court entered an Opinion and Order denying the defendant's request. See Docket No. 655.

Consequently, González was sentenced to 151 months as to counts Fourteen, Fifteen, Twenty-Three, Twenty-Four, Twenty-Seven and Twenty-Eight, to be served concurrently with each other; 5 years as to count Seventeen and 25 years as to counts Twenty-Five and Twenty-Nine, to be served consecutively to each other, for a total term of 811 months. In addition, the defendant was sentenced to five years of supervised release as to each count, to be served concurrently with each other. See Docket No. 672.

On March 7, 2014 the defendant filed a Motion for Reconsideration of the Court's October 4, 2013 Opinion and Order denying his claims of ineffective assistance of counsel. See Docket No. 680. The motion avers that during the defendant's allocution at the Sentencing Hearing, the Court "questioned the defendant extensively regarding his position on the plea negotiation process." Id at page 2. This exchange, the defendant posits, opened up the proverbial Pandora's Box and revealed a plethora of mistakes that his trial counsel made throughout the plea bargain negotiations. As a result, he received a sentence of 811 months when he could have entered into a plea agreement to serve 15 or, at worst, 20 years. See Docket No. 680. Based on those circumstances, the defendant asked the Court to reconsider its decision denying relief under Lafler v. Cooper, 132 S.Ct. 1376 (2012) and Missouri v. Frye, 132 S.Ct. 1399 (2012). Shortly thereafter, the government opposed the Request. See Docket No. 685.

Four days after filing the Motion for Reconsideration, the defendant entered a Notice of Appeal of the Judgment against him. See Docket No. 682. On April 28, 2014 the defendant filed an Emergency Motion asking the Court to express its position as to whether it would grant or deny the Motion for Reconsideration in light of the provisions of Fed. R. App. P. 12.1. See Docket No. 695. The Court acquiesced, expressing that it would consider the Motion for Reconsideration "as it raised substantial issues that the Court would like to examine." Id.

## II.   STANDARD OF REVIEW

To prevail on a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that it resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Shuman v. Spencer, 636 F.3d

24, 31 (1st Cir. 2011). If he falls short on either requirement, his claim fails. Strickland, 466 U.S. at 697.

Deficient performance means that trial counsel's representation failed to meet "an objective standard of reasonableness." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir.2010) (quoting Strickland, 466 U.S. at 688) (internal quotation marks omitted). Counsel's performance is deficient only if, "given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." Id. (citing Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also Harrington v. Richter, 131 S.Ct. 770, 788 (2011). Moreover, the petitioner must show a "reasonable probability" that if counsel had acted differently, his trial would have had a more favorable outcome. Tevlin, 621 F.3d at 66 (citing Porter v. McCollum, 130 S.Ct. 447 (2009)) (internal quotations marks omitted.)

The Supreme Court has long recognized that the negotiation of a plea bargain "is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." Padilla v. Kentucky, 559 U.S. 356 (2010) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)). "The Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected." Frye, 132 S.Ct. at 1402 (citing Montejo v. Louisiana, 556 U.S. 778, 786 (2009) and Hill, 474 U.S. at 52).

Where the defendant claims, as he does here, that his counsel's ineffective advice led to the rejection of a plea offer and the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the Court. Lafler, 132 S.Ct. at 1385. That inquiry also entails a determination that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence than in fact were imposed." Id.

"A defendant who alleges ineffective assistance of counsel must carry the devoir of persuasion on both tiers of the Strickland test." Scarpa v. Dubois, 38 F.3d 1, 8-9 (1st Cir. 1994).

Finally, these issues are present before the Court through the procedural mechanism of a motion for reconsideration. Motions for reconsideration in criminal cases are not specifically authorized either by statute or by rule. U.S. v. Ortiz, 741 F.3d 288, 293 n. 2 (1st Cir. 2014)(citing United States v. Rollins, 607 F.3d 500, 502 (7th Cir.2010)). "To the extent that such motions are viable at all, they rely on the 'traditional and virtually unquestioned practice' of district courts exercising their inherent authority to revisit their own orders." Id. (citing United States v. Dieter, 429 U.S. 6, 8 n. 3 (1976) (per curiam)).

### III.  APPLICABLE LAW AND ANALYSIS

#### A. The attorney's performance was deficient

To prevail on his claim of ineffective assistance of counsel, González must first show that his attorney's performance was deficient. What constitutes a deficient assistance of counsel is defined by the prevailing norms in the legal profession. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688.

González makes the case that his intention from the onset was to plead guilty and avoid trial; an intention that he verbalized on numerous occasions to his attorney. See Docket No. 680 at page 2. Instead of following his instructions, Mr. Calderón failed time and time again to finalize any agreement with the Government.

The defendant draws a parallel between the factual scenario in this case and the incidences in Lafler and Frye. The similarities between both cases are not limited to the date in which they were decided. Both Lafler and Frye deal with claims of ineffective assistance of counsel in the context of plea negotiations.

In Lafler, the defendant alleged that his counsel's ineffective assistance caused him to reject a plea offer and go to trial. After a guilty verdict, the defendant received a sentence that was three-and-a-half times harsher than that offered in the rejected plea bargain agreement. In an Opinion delivered by Justice Kennedy, the Supreme Court

held that if a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. The parties conceded that the assistance had been subpar and thus the central issue was the prejudice component of the Strickland inquiry. The Court ruled that when the attorney's assistance falls below an objective standard of reasonableness, the prejudice prong of the Strickland test is satisfied if "loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." Lafler, 132 S.Ct. at 1387.

In Frye, the issue was not that the attorney ill-advised the defendant as to acceptance of the offer, but that he failed to inform him that there were plea offers on the table at all. After the offers expired, the defendant plead guilty but to more severe terms. Hence, since there was no trial, the analysis of the second prong of the Strickland test differs from that in Lafler.

Nevertheless, both cases provide a comprehensive framework of analysis against which to scrutinize the claims in the case before us. Frye gives us guidance as to the first prong of the Strickland test and Lafler as to the second.

To determine whether Mr. Calderón's conduct fell below the standard, the Court will retrace the factual incidences of this case as it pertains to the plea agreement negotiations. This task is particularly daunting as Mr. Calderón's testimony at the Lafler hearing left behind more questions than answers. The mere exercise of having to pierce through the record to put together the events that unfolded in this case is indicative of the irregularities that took place.

The first of the three plea offers that the government extended to the defendant was dated November 10, 2010. See Docket No. 609-1. The letter, signed by Assistant U.S. Attorneys Courtney Coker and Jacqueline Novas, indicated that, in exchange for pleading guilty to counts Fourteen and Seventeen and agree to the forfeiture allegation of the indictment, the government would recommend a term of 108 months for count Fourteen and 60 months for count Seventeen to be served consecutively, for a total imprisonment range of 168 months. The plea offer had an expiration date of December 10, 2010 at noon. See Docket No. 602-1.

The defendant claims that the deadline passed without his

knowledge, an inexcusable circumstance that he attributes to his attorney's lack of diligence. See Docket No. 679, page 11, lines 12-22.[1] When asked at the Lafler hearing whether his client was aware that a plea offer for 14 years was on the table, Mr. Calderón responded in the affirmative and indicated that he visited González at the Metropolitan Detention Center in Guaynabo ("MDC") and that González rejected the offer verbally because "he thought that the offer was too high." See Docket No. 698, page 46, lines 2-15; see also Docket No. 632, page 19, lines 6-16 and page 24, lines 17-23. Mr. Calderón did not produce any document documenting González's rejection of the November 10, 2010 plea offer.

On February 18, 2011 attorneys Kate Albrecht and Peter Koski from the Public Integrity Section of the Department of Justice sent a letter addressed to Mr. Calderón that stated, in pertinent part: "we understand that the plea offer in this matter expired on December 10, 2010. To the extent you are interested in any further plea discussions, please contact us immediately. Given the resources we are expending to travel to Puerto Rico to prepare and to try the case, we will not engage in plea discussions beyond March 1." See Docket No. 609-2. Three co-defendants accepted the government's offer and resolved their cases through plea agreements. Defendant González, however, declined the invitation. See Docket No. 609.

Almost a year after the first plea offer was extended; the government's counsel sent Mr. Calderón a final plea offer in which he tendered a 180-month prison term. The letter, dated October 30, 2011 also expressed: "[i]f your client is willing to accept this offer, please let me know as soon as possible so that I can begin drafting a plea agreement. This offer will expire at the close of business on Thursday, November 3, 2011. No counter offers will be considered. This will be your

---

[1]

"The Court: You initially had been offered 14 years?
The Defendant: Yes, because I saw that in the courtroom, but he never brought that over.
The Court: I'm talking prior to the day of trial. Originally the plea offer had been 14 years, no?
The Defendant: Well, he only took—he took not a plea.
The Court: And for how many years was that?
The Defendant: Fifteen. He never brought over one for fourteen.
The Court: So it was 15 the first time you heard of a plea, an offer?
The Defendant: Yes. Fifteen years."
See Docket No. 679, page 11, lines 12-22.

client's final opportunity to resolve pretrial his pending charges in case number 10-cr-344." See Docket No. 609-3.

Although initially Mr. Calderón averred that he had not visited González during the time in which the plea offer for 15 years was on the table, (Docket No. 632, page 30, lines 17-24; page 31, lines 1-8), it later transpired that Mr. Calderón had signed the visitation log at MDC on November 1 and November 2 of 2011. See Docket No. 698, page 47, lines 15-25. Mr. Calderón claims that during the meeting with González, the defendant rejected the offer in writing. See Docket No. 698, page 48, lines 1-23; see also Docket No. 626-1.

Nevertheless, on November 10, 2011, Mr. Calderón filed a motion for change of plea on behalf of the defendant without his client's knowledge or authorization to allegedly, "preserve his rights." See Docket No. 632, page 36, lines 11-20; see also Docket No. 284. The motion states that the parties had reached a plea agreement whereby the defendant would plead guilty. See Docket No. 284. The motion goes on to say that defense counsel "has thoroughly discussed the facts" of the case with his client "who has also been fully informed of the nature of the charges, the evidence and the terms of the plea agreement." Id. Finally, it is stated that "[a] written plea agreement has been drafted and will be filed within the Court on or before the scheduled date for the hearing for change of plea." Id.

When the Court probed Mr. Calderón at the Lafler hearing as to how it could be that the defendant had rejected the plea agreement yet the motion for change of plea—which Mr. Calderón admitted to filing out of his own initiative—said otherwise, the attorney failed to provide a plausible explanation.

One day after filing the motion for change of plea, Mr. Calderón received an email from the defendant where he expressed that he always wanted to plead guilty and asked defense counsel to "use his last bullets the last day before the Judge to try and obtain a lesser sentence." See Docket No. 626-3. The defendant also asked Mr. Calderón to please contact his mother to explain what would be the next steps in the case. Id. It is surprising that there is no reference to the plea agreement. Id.

On November 14, 2011 Mr. Calderón filed a motion to continue the change of plea hearing originally set for November 17, 2011 adducing that

the details of the plea agreement had not been finalized. See Docket No. 286. Furthermore, the motion states: "[g]iven the details of the agreement, we request that the hearing be postponed, possibly after January 16, 2012 to allow both the government and the defendant time to complete the details of the agreement." Id.

Seemingly after receiving the notification that the motion to continue had been filed, Mr. Koski wrote Mr. Calderón an email expressing that he had "jumped the gun by filing a motion requesting a change of plea hearing" and reminding him that "we don't even have an executed plea agreement." See Docket No. 626-4. Little did Mr. Koski know, Calderón was misrepresenting something as crucial as his client's acceptance of the plea offer.

While being under the impression that the defendant would enter into a plea agreement with the government, Mr. Koski sent Calderón a Draft of the Plea Agreement on December 13, 2011. See Docket No. 626-5. Mr. Koski asked that a signed copy of the agreement be returned to him via FedEx on or before December 21, 2011. Id.

The day that the deadline expired, Mr. Koski sent Mr. Calderón an email reminding him that he had until close of business day to submit the signed copy. In particular, the email further states: "[i]n last week's email I asked you to inform me immediately if we needed more time. To date I have not heard from you. I assume that means you will be sending us the signed plea agreement today? We cannot keep the plea offer in indefinite state of limbo while awaiting your client's signature." See Docket No. 626-6.

The following day, December 22, 2011, Mr. Koski sent Mr. Calderón yet another email saying that if the government did not receive either a signed copy of the plea agreement "by close of business day tomorrow," meaning Friday, December 23, 2011, or "an email from you confirming your client's intent to sign the plea agreement but requesting a set amount of time in order to execute it, we will withdraw the plea offer and proceed to trial." See Docket No. 626-6. Several hours later, Mr. Calderón responded that he was in the United States and would return on December 29. Id. He further averred that he would send the document the first week of January. Id.

On December 29, 2011 the defendant sent Mr. Calderón an email expressing that he had "verified the plea" and that he "understood it a little bit" but that he needed Mr. Calderón to "come visit me tomorrow to finalize the plea." See Docket No. 626-7. That electronic communication sent a month after Mr. Calderón represented to the Court that the parties had reached an understanding and that the details of the plea agreement were underway, is the first indication that the defendant had reviewed the document. That email also shows that Mr. Calderón did not explain the details of the plea to his client until he fully understood them, as is required of a competent attorney.

As of January 6, 2012 Mr. Calderón still had not sent the government the signed copy of the plea agreement that he had promised. See Docket No. 632, page 46, lines 8-25. Pursuant to an email of even date from Mr. Koski to Mr. Calderón, the government extended the deadline until January 11 by which time it would withdraw the offer and go to trial on February 27, 2012. See Docket No. 632, page 47, lines 1-9; see also Docket No. 609-4. Mr. Koski cautioned that no further extensions would be granted. Id.

In an email dated January 7, 2012, Calderón responded that he would "send it on Monday," meaning January 9, 2012. See Docket No. 609-5; see also Docket No. 632, page 48, lines 4-18. The MDC visitation logs show that Mr. Calderon visited the defendant on January 9, 2012. See Docket No. 698, page 43, lines 2-18.

Calderón avers that he told his client about the new deadline of January 11, 2012 for the second plea offer when he visited him "somewhere in December." See Docket No. 698, page 52, lines 1-17. That statement is inconsistent with the timeline, as the deadline extension had been communicated on the January 6, 2012 email. See Docket No. 609-4. Mr. Calderón further avers that on his meeting with the defendant on January 9, 2014, he refused to sign the plea agreement. See Docket No. 698, page 52, lines 16-22.

On January 11, 2012, the day that the deadline expired, Mr. Calderón sent Mr. Kosky an email telling him: "I'm afraid it's not going to happen. The client refused to sign for the 15 years offer." See Docket No. 632, page 52, lines 12-25; see also Docket No. 609-6. Two days after, the government informed defense counsel that "[g]iven that your client

has rejected the plea offer … we will be filing a motion with the court requesting that your client be tried on February 27 with his co-defendants." See Docket No. 609-6. Even after missing deadline after deadline to submit a plea agreement, Mr. Calderón purported to revive the plea negotiations with a counteroffer of six years which the government did not accept. Id.

On January 13, 2012 the Court held a status conference as to González. The hearing had originally been set as a Change of Plea Hearing but then converted to a Status Conference. According to the Minutes, defense counsel informed that during the morning his client had advised him that he would not plead guilty. See Docket No. 317. However, as set forth in the Minutes, González then "changed his mind" and wanted to proceed with the Change of Plea hearing. Id. Nevertheless, the Government informed that they had withdrawn the plea offer. Id.

The defendant later tried to explain the incident to the Court in a letter dated February 1, 2012. See Docket No. 626-10. In that letter he expressed that he felt sorry for not accepting the plea offer for fifteen years that his attorney presented to him on January 13, 2012. Id. Moreover, the defendant recognizes that he exceeded the time to accept the offer. Id. It is notable that the letter does not mention the prior offer for fourteen years.

At the end of the January 13, 2012 Status Conference, the Court advised the defendant that his options at the time were to go to trial or enter a straight plea and set the trial for March 27, 2012. Id.

The visitation logs at MDC show that between January 16, 2012 and the commencement of trial on March 27, Calderon did not visit his client once. See Docket No. 632, page 61, lines 10-20.

This sequence of mishaps escalates to the final act where, on the day that trial was set to begin, the government gave the defendant one last invitation to negotiate as long as the offer from the defendant was "in the twenty-year range." See Docket No. 609 at page 3. That means that instead of a straight plea, which would have exposed González to a minimum mandatory of 65 years; there was a possibility of discussing with the government a plea offer in the 20-year range. The defendant avers that he told his counsel at that point that he wanted to plead guilty. See Docket No. 679, page 7, lines 3-13.

But that message never reached the prosecution as intended. According to the government's recollection of what transpired during that day "[a]t no time did the government make an official plea offer to the defense, and defense counsel did not make an offer to the government." See Docket No. 609, page 3.

When proceedings resumed and with no plea agreement on the table, Mr. Calderón made a statement to the court: "There is going to be a plea." See Docket No. 632, page 62, lines 13-16. At that time, prosecutor Driscoll expressed his surprise by saying: "You didn't tell me that. Is he going to plead straight off to the indictment?" See Docket No. 632, page 62, lines 14-19. To which Calderon responded: "What you told me." See Docket No. 632, page 63, line 2. Then, Mr. Driscoll expressed: "Twenty years. If he is going to plead, we need something signed." See Docket No. 632, page 63, lines 2-5. When asked by the Court whether he had informed the government that his client was going to plead, Mr. Calderón said that he had "informed Janet," meaning the Court's courtroom deputy. See Docket No. 632, page 64, lines 2-6.

From the transcript of the sentencing hearing it is made clear that Mr. Driscoll told defense counsel that they could agree to a plea of around 20 years but that Mr. Calderón "gave [him] every indication that that was not going to work." See Docket No. 632, page 67, lines 1-9. Then Mr. Driscoll, clearly frustrated at this point, stated: "[y]eah, I don't think we can negotiate that way. I told you the terms. You gave me a counteroffer of lower numbers than that…we have been negotiating this for how long? I can't negotiate with the jury waiting." See Docket No. 632, page 69, lines 19-25 and page 70, lines 1-7. Mr. Driscoll specifically told Mr. Calderón that he had to come back to him with a "clear statement" before the lunch break and counsel "did not do that." See Docket No. 632, page 71, lines 14-22.

According to González, even though he told his counsel that he wanted to accept that plea, the agreement never materialized. The government states that the reason is simple: "it was simply too late." See Docket No. 609. The Court could not agree more.

The record speaks loud as to counsel Calderon's ineffective assistance. The list of inconsistencies and misstatements proffered by Mr. Calderón is considerable; their consequence on the outcome of the

defendant's case, nefarious.

Beginning with the first offer, there is no evidence that the defendant rejected it and González actually avers that his counsel never communicated it. In his letter to the Court dated February 1, 2014, the defendant mentions that he was "devastated" when he received the government's letter offering fifteen years. See Docket No. 626-10. We interpret his silence regarding the previous, lower offer for fourteen years, as more indicative of unawareness than disregard.

In Frye, the Court found that defense counsel was deficient in failing to communicate to the defendant two written plea offers from the prosecutor, which would have either recommended a lesser sentence than the four year maximum sentence for the charged felony offense of driving with a revoked license or would have allowed defendant to plead guilty to a misdemeanor, before the offers expired. Frye, 132 S. Ct. 1399 (2012). Following Frye's rationale, Mr. Calderón's failure to communicate the first plea offer constitutes ineffective assistance of counsel.

The events surrounding the second offer are even more entangled. Though Mr. Calderón expresses time and time again that his client told him that he did now want to plead guilty (see, e.g. Docket No. 632, page 55, lines 11-13; page 58, lines 10-13.), he filed a motion for change of plea where he represented both to the Court and to the government that his client was intent on pleading guilty and that he was working on a signed agreement. See Docket No. 284. To make matters worse, he admitted to filing the motion without his client's authorization. See Docket No. 632, page 36, lines 11-20; page 37, lines 1-6.

Mr. Calderón also failed to abide by the professional standards of his profession in his dealings with the government throughout the plea negotiation process. Since the beginning of November, when the motion for change of plea was filed, he stalled the negotiations with the government for several weeks by misrepresenting that his client was going to sign the plea agreement within the timeframe established. Yet he failed to deliver and even admitted at the Lafler hearing that he did not give much seriousness to the plea expiration deadlines. See Docket No. 698, page 11, lines 17-20. Fair and simple, Calderon misled the Court and the prosecution.

Then, there's the matter of the invitation to negotiate expressed by

the government on the first day of trial. The government was straightforward, as was the defendant in his desire to plead guilty. All that was needed was the defense counsel's active participation in getting the deal finalized. However, Mr. Calderón's inertia once again presented itself and the plea agreement never materialized.

Though not binding, we follow a useful step of the Court's inquiry in Frye and look to the Model Rules of Professional Conduct recommended by the American Bar Association ("A.B.A."). Rule 1.3 of the Model Rules of the A.B.A., for example, states that: "[A] lawyer shall act with reasonable diligence and promptness in representing a client." Furthermore, Rule 1.4 indicates, in pertinent part, that a lawyer shall "promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules" and also "reasonably consult with the client about the means by which the client's objectives are to be accomplished; keep the client reasonably informed about the status of the matter and explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." It seems clear to this Court that Mr. Calderón's conduct does not comply with these tenements.

As the Supreme Court proclaimed in Padilla v. Kentucky "[i]t is our responsibility under the Constitution to ensure that no criminal defendant—whether a citizen or not—is left to the 'mercies of incompetent counsel.'" Padilla, 559 U.S. at 376 (citing McMann v. Richardson, 397 U.S. 759, 771 (1970)). We take that role to heart.

The defendant has claimed all along that he wanted to plead guilty and avoid trial. He said so in his emails to his attorney, see Docket no. 698, page 21, lines 14-17, and at the sentencing hearing. See Docket No. 679, page 6, lines 5-17. From looking at the record, the Court believes that his desire never came to fruition because he received incompetent assistance from his defense counsel.

**B. Counsel's deficient performance resulted in prejudice**

Having determined that there is sufficient indicium of ineffectiveness of counsel, the Court now turns to the second prong of the Strickland test. To establish this prong of the test, the defendant must "show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S.Ct. 2052 at 694. When the case pertains to plea agreement negotiations, the inquiry turns on whether counsel's ineffective assistance "affected the outcome of the plea process." Lafler, 132 S.Ct. at 1384 (quoting Hill, 474 U.S. at 59.)

Here, as in Lafler, the prejudice alleged is having to stand trial and the subsequent conviction and imposition of a far more severe sentence. Following in Lafler's footsteps, the defendant in this case rejected several plea offers, was convicted in the ensuing trial and exposed to a sentence that was more than three times larger than even the least favorable plea offer.

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court(i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both under the offers' terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 132 S.Ct. at 1385.

The defendant in this case received three plea offers and an invitation to negotiate on the day of trial. Taking as a whole the facts averred, the Court finds that, but for the ineffective assistance of counsel Calderón, there is a reasonable probability that the defendant would have accepted the plea offer for twenty years. The defendant has expressed time and time again that his disposition all along was to plead guilty. In addition, "a substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer." Sawaf v. U.S., No. 13-5620, 2014 WL 2936431, at *3 (6th Cir. June 30, 2014).

There is also a reasonable probability that the prosecution would not have withdrawn it if defense counsel had been diligent. This inference is supported by the government's demeanor throughout the case. Even after defense counsel failed to comply with deadlines and made compromises that he did not keep, the government still opened the door to negotiations on the first day of trial.

It is also highly likely that the plea offer would have been accepted by the Court. After all, co-defendant Omar Torres Ruperto pled guilty under the terms of a plea agreement and was sentenced to 144 months (equivalent to 12 years, which is two years less than the first plea offer extended to González.) See Docket No. 225.

Finally, it is undisputable that the conviction or sentence under the offer's terms would have been much less severe. Not only was González exposed to a trial but he received a mandatory sentence of 65 years, more than three times the sentence that he would have received if he had pled guilty on the day of trial.

Were it not for the failings of his counsel, González would have received a sentence comparable to that of Torres Ruperto. "The favorable sentence that eluded the defendant in the criminal proceeding appears to be the sentence he or others in his position would have received in the ordinary course, absent the failings of counsel." Lafler, 132 S.Ct. at 1387.

We thus find that González has satisfied both requirements needed for showing a Sixth Amendment violation under Strickland.

**C. Appropriate Remedy**

In Lafler, the Court delved into the question of what constitutes an appropriate remedy when a defendant establishes ineffective assistance of counsel in the context of plea bargaining. Lafler, 132 S.Ct. at 1388-89.

Ultimately, it concluded that that the "correct remedy" was to "order the State to reoffer the plea agreement." Lafler, 132 S.Ct. at 1391. The Court went on to explain:

> Presuming respondent accepts the offer, the state trial court can then exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence from trial undisturbed.

Id.

Even though, unlike Lafler, this case did not arise as a federal collateral challenge to a state-court conviction, we see no reason to deviate from the conclusion detailed therein. We thus order the government to reoffer the plea agreement for 20 years.

### IV. CONCLUSION

In light of aforementioned, this Court hereby **GRANTS** Defendant's Motion for Reconsideration (Docket No. 680).

**SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of August, 2014.

S/ **JUAN M. PÉREZ-GIMÉNEZ**
**JUAN M. PÉREZ-GIMÉNEZ**
**UNITED STATES DISTRICT JUDGE**